UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

A.E.,

              Plaintiff,

      v.

ANDREW SAUL,

            Defendant.

Case No.  19-cv-04588-JCS

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS**

Re: Dkt. Nos. 24, 27

## I.    INTRODUCTION

On July 18, 2014, A.E.[1] applied for disability insurance benefits under Title II of the Social Security Act.  She applied for supplemental security income ("SSI") under Title XVI of the Social Security Act on July 25, 2014.  In both applications, she alleged an onset date of September 3, 1994. The Title XVI claim was denied initially on December 19, 2014, and upon reconsideration on April 2, 2015.  Administrative Law Judge ("ALJ") Major Williams, Jr. held two hearings, on February 7, 2017 and on July 26, 2017.   Plaintiff, who was represented by counsel, appeared at both hearings.  In addition, the ALJ heard testimony from vocational experts at both hearings and heard testimony from medical expert ("ME") Dr. Nathan Strahl at the July 26, 2017 hearing.  The ALJ issued an unfavorable decision on Plaintiff's application for SSI benefits on August 30, 2017 but he did not address Plaintiff's application for disability insurance benefits under Title II.  On February 2, 2019, the Appeals Council granted the request for review, finding that the ALJ's

---

[1] Because opinions by the Court are more widely available than other filings and this Order contains potentially sensitive medical information, this Order refers to Plaintiff using only his initials.

decision contained an error of law.

On June 25, 2019, the Appeals Council issued a decision denying Plaintiff's applications. In the decision, the Appeals Council addressed both the Title II claim and the Title XVI claim. As to the Title II claim, the Appeals Council found that Plaintiff was insured for periods of disability between January 1, 2004 and December 31, 2004 and between April 1, 2014 through March 31, 2022. The Appeals Council adopted many of the ALJ's findings but also assigned weight to certain medical opinion evidence that the ALJ had not addressed, resulting in a slightly more restrictive residual functional capacity determination. Nonetheless, the Appeals Council reached the same ultimate conclusion as the ALJ, namely, that Plaintiff was not disabled. Plaintiff subsequently commenced this action for judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

Presently before the Court are the parties' cross-motions for summary judgment.[2] For the reasons stated below, the Court GRANTS Plaintiff's Motion for Summary Judgment, DENIES the Commissioner's Motion for Summary Judgment, and remands for further proceedings consistent with this opinion.[3]

## II.    REGULATORY FRAMEWORK FOR DETERMINING DISABILITY

### A.    The Five-Step Framework

Disability insurance benefits are available under the Social Security Act (the "Act") when an eligible claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 423(a)(1). A claimant is only found disabled if their physical or mental impairments are

---

[2] At the outset of this case, the undersigned ordered the parties to meet and confer and submit either a joint or separate statements of the administrative record. Dkt. No. 7. The parties failed to comply with the Court's order. The purpose of this requirement is two-fold: the statements of the record are helpful to the Court in reviewing the record and they also discourage the parties from filing boilerplate pleadings. Because the parties included relatively detailed descriptions of the record in their briefs, the Court excuses their failure to comply with its order. However, it is expected that counsel will adhere to this requirement in future social security appeals before the undersigned.

[3] The parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c).

1   of such severity that they are not only unable to do their previous work but also "cannot,

2   considering [their] age, education, and work experience, engage in any other kind of substantial

3   gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

4       The Commissioner has established a sequential, five-part evaluation process to determine

5   whether a claimant is disabled under the Act.  *See Tackett v. Apfel,* 180 F.3d 1094, 1098 (9th Cir.

6   1999) (citing 20 C.F.R. § 404.1520).  The claimant bears the burden of proof at steps one through

7   four, but the burden shifts to the Commissioner at step five.  *Id.*  "If a claimant is found to be

8   'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent

9   steps."  *Id.*

10       At step one, the ALJ considers whether the claimant is presently engaged in "substantial

11   gainful activity."  20 C.F.R. § 404.1520(a)(4)(i).[4]  If the claimant is engaged in such activity, the

12   ALJ determines that the claimant is not disabled, and the evaluation process stops.  *Id.*  If the

13   claimant is not engaged in substantial gainful activity, the ALJ continues to step two.  *See id.*

14       At step two, the ALJ considers whether the claimant has "a severe medically determinable

15   physical or mental impairment" or combination of such impairments that meets the regulations'

16   twelve-month durational requirement.  20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).  An impairment

17   or combination of impairments is severe if it "significantly limits [the claimant's] physical or

18   mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  If the claimant does not have

19   a severe impairment, disability benefits are denied.  20 C.F.R. § 404.1520(a)(4)(ii).  If the ALJ

20   determines that one or more impairments are severe, the ALJ proceeds to the next step.  *See id.*

21       At step three, the ALJ compares the medical severity of the claimant's impairments to a

22   list of impairments that the Commissioner has determined are disabling ("Listings").  *See* 20

23   C.F.R. § 404.1520(a)(4)(iii); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1.  If one or a combination

24   of the claimant's impairments meets or equals the severity of a listed impairment, the claimant is

25   disabled.  20 C.F.R. § 404.1520(a)(4)(iii).  Otherwise, the analysis continues.  *See id.*

26       At step four, the ALJ must assess the claimant's residual functional capacity ("RFC") and

27

28   [4]The Court cites the regulations applicable to disability insurance benefits applications because the parallel SSI regulations are virtually identical.

United States District Court
Northern District of California

past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  The RFC is "the most [a claimant] can still do despite [that claimant's] limitations . . . based on all the relevant evidence in [that claimant's] case record."  20 C.F.R. § 404.1545(a)(1).  The ALJ then determines whether, given the claimant's RFC, the claimant would be able to perform their past relevant work.  20 C.F.R. § 404.1520(a)(4).  Past relevant work is "work that [a claimant] has done within the past fifteen years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn how to do it."  20 C.F.R. § 404.1560(b)(1).  If the claimant is able to perform their past relevant work, then the ALJ finds that they are not disabled.  If the claimant is unable to perform their past relevant work, then the ALJ proceeds to step five.

At step five, the Commissioner has the burden to "identify specific jobs existing in substantial numbers in the national economy that the claimant can perform despite [the claimant's] identified limitations."  *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995)).  If the Commissioner meets this burden, the claimant is not disabled.  *See* 20 C.F.R. § 404.1520(f).  Conversely, the claimant is disabled and entitled to benefits if there are not a significant number of jobs available in the national economy that the claimant can perform.  *Id.*

### B.   Supplemental Regulations for Determining Mental Disability

The Social Security Administration has supplemented the five-step general disability evaluation process with regulations governing the evaluation of mental impairments at steps two and three of the five-step process.  *See generally* 20 C.F.R. § 404.1520a.  First, the Commissioner must determine whether the claimant has a medically determinable mental impairment.  20 C.F.R. § 404.1520a(b)(1).  Next, the Commissioner must assess the degree of functional limitation resulting from the claimant's mental impairment with respect to the following functional areas: 1) understand, remember, or apply information; 2)  interact with others; 3) concentrate, persist, or maintain pace; and 4) adapt or manage oneself.   20 C.F.R. §§ 404.1520a(b)(2), (c)(3).  Finally, the Commissioner must determine the severity of the claimant's mental impairment and whether that severity meets or equals the severity of a mental impairment listed in Appendix 1.  20 C.F.R. § 404.1520a(d).  If the Commissioner determines that the severity of the claimant's mental

United States District Court
Northern District of California

1   impairment meets or equals the severity of a listed mental impairment, the claimant is disabled.

2   *See* 20 C.F.R. § 404.1520(a)(4)(iii).  Otherwise, the evaluation proceeds to step four of the general

3   disability inquiry.  *See* 20 C.F.R. § 404.1520a(d)(3).

4       Appendix 1 provides impairment-specific "Paragraph A" criteria for determining the

5   presence of various listed mental impairments, but all listed mental impairments share certain

6   "Paragraph B" severity criteria in common (and some have alternative "Paragraph C" severity

7   criteria).  *See generally* 20 C.F.R. § 404, Subpt. P, App. 1 at 12.00.  Any medically determinable

8   mental impairment—i.e., one that satisfies the Paragraph A criteria of one or more listed mental

9   impairments—is sufficiently severe to render a claimant disabled if it also satisfies the general

10  Paragraph B criteria, which requires that a claimant's mental disorder "result in 'extreme'

11  limitation of one, or 'marked' limitation of two, of the four areas of mental functioning."  *Id*. at

12  12.00(A)(2)(b). A claimant has a "marked" limitation if the claimant's "functioning in this area

13  independently, appropriately, effectively, and on a sustained basis is seriously limited."  20 C.F.R.

14  § Pt. 404, Subpt. P, App. 1, 12.00(F)(2)(d).  A claimant with an "extreme" limitation is "not able

15  to function in this area independently, appropriately, effectively, and on a sustained basis."  20

16  C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(F)(2)(e).

17      This evaluation process is to be used at the second and third steps of the sequential

18  evaluation discussed above.  Social Security Ruling 96-8p, 1996 WL 374184, at *4 ("The

19  adjudicator must remember that the limitations identified in the 'paragraph B' and 'paragraph C'

20  criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at

21  steps 2 and 3 of the sequential evaluation process.").  If the Commissioner determines that the

22  claimant has one or more severe mental impairments that neither meet nor are equal to any listing,

23  the Commissioner must assess the claimant's residual functional capacity.  20 C.F.R. §

24  404.1520a(d)(3).  This is a "mental RFC assessment [that is] used at steps 4 and 5 of the

25  sequential process [and] requires a more detailed assessment by itemizing various functions

26  contained in the broad categories found in paragraphs B and C of the adult mental disorders

27  listings in 12.00 of the Listing of Impairments . . . . "  Social Security Ruling 96-8p, 1996 WL

28  374184, at *4.

5

United States District Court
Northern District of California

1

### C.      Factual Background

2        Plaintiff was 54 years old at the time of her applications for Title II and XVI benefits, in

3    2014.  Administrative Record ("AR") 251.  She was born and raised in Oakland, California, to

4    parents who were IV drug users. AR 549. As a child, Plaintiff was removed from her parents'

5    home numerous times and placed in group homes or with other families due to her parents' drug

6    use.  AR 974.  When she was 18 years old, Plaintiff witnessed her stepfather being fatally stabbed.

7    AR 574. Plaintiff's mother and sister died of drug-related causes. AR 825, 974.

8        Plaintiff began using crack cocaine in the ninth grade. AR 1012. Her cocaine use continued

9    until 2009. AR 537. Despite Plaintiff's drug use, she graduated from high school in 1978.  AR

10   536. Plaintiff obtained a certificate in baking and pastry from Laney College in 2012. AR 1012.

11   Plaintiff has a history of short-term, unskilled jobs, most recently in the food services department

12   at Oakland Coliseum, between 2013 and 2015. AR 1012.

13       Plaintiff is divorced and has one child and two grandchildren. AR 546, 1011.  Plaintiff has

14   lived with family, in homeless shelters and in motels over the years.  AR 1012-1013. Plaintiff has

15   a history of involvement in relationships in which she has been subjected to domestic violence.

16   AR 549, 825, 902, 973, 1012. In the early 1990s, Plaintiff was the victim of rape and attempted

17   murder in which her assailant slashed her throat, requiring 98 stitches. AR 549, 974, 1013.

18       Plaintiff claims that she cannot work due to anxiety, depression, past domestic violence,

19   phobia of people, paranoia, and sleepless nights. AR 247.  The medical records reflect that she

20   began receiving mental health treatment on October 10, 2014, from Alameda County Mental

21   Healthcare Services, having been referred by Sausal Creek in connection with a recent mental

22   health "episode." AR 561, 731.  The therapist who met with her, Mazu Byrd, MFT, reported that

23   Plaintiff complained of insomnia, isolation, depression and auditory hallucinations and that her

24   symptoms had gotten worse since she stopped using cocaine, four years before.  AR 731; *see also*

25   10/16/14 note by MFT Byrd  stating that. Ms. Byrd also observed "repeated presence of psychotic

26   symptoms."  AR 723.  She diagnosed Plaintiff with depressive disorder and PTSD.  AR 550.

27   Psychiatrist Lusito Roxas, M.D., evaluated Plaintiff on October 24, 2014 and diagnosed her with

28   depressive disorder not otherwise specified ("NOS") and cannabis abuse.  AR 736.  He assigned a

GAF score of 52. AR 564.  He prescribed Celexa and trazadone. AR 737.  In notes from a November 17, 2014 appointment, Dr. Roxas noted that Plaintiff's medication compliance was poor and that she told him she did not understand she needed to take the Celexa he prescribed every day.  AR 744.  He noted that Plaintiff reported she was "hearing whispers off and on."  *Id.*

Plaintiff received mental health treatment from NP Seamus McCoy and Dr. Hiawatha Harris at Pathways to Wellness from January 15, 2015 through July 17, 2016.  AR 569, 783-814, 815-898.  There, she was diagnosed with major depressive disorder with psychotic features and cannabis abuse.  AR 569, 794.  She was prescribed risperidone for psychosis, trazadone, Celexa and Wellbutrin by Dr. Harris and NP McCoy.  AR 783, 794, 796, 836-837.  She complained repeatedly of auditory hallucinations.  AR 785 (6/30/16 treatment note by Dr. Harris reporting Plaintiff "[r]eports 'voices' are good and bad"), 787 (4/20/16 treatment note by Dr. Harris stating "[v]oices and noises still present 'sometimes louder than other times'"), 789 (3/17/2016 treatment note by Dr. Harris reporting Plaintiff "reports auditory hallucinations in the morning telling her to 'get up' or 'don't go to the doctor today.'"), 793 (1/20/16 treatment note of NP McCoy observing that auditory hallucinations had "decreased to echos and whispering"), 795 (1/9/15 treatment note by NP McCoy that auditory hallucinations are "louder now"), 797 (9/10/15 treatment note by NP McCoy describing auditory hallucinations as sometimes a "loud noise" but more commonly "whispers" that are "dystonic" and "come from behind her head."), 833 (1/30/15 treatment notes by NP McCoy describing reports of auditory hallucinations in the form of voices that are "both high pitched and deep, occasionally whispers" that "predict[ ] failure").  Plaintiff told NP McCoy at a January 29, 2015 appointment that she could not remember when the auditory hallucinations began, that she did not hear voices as a child, and that she began to hear voices more than four months ago.  AR 837.

Dr. Harris completed a Mental Impairment Questionnaire, dated April 13, 2016, in connection with Plaintiff's application for disability benefits.  AR 910-913.  Dr. Harris listed Plaintiff's diagnosis as DSM-IV code 296.34 (Major depressive affective disorder, recurrent episode, severe, specified as with psychotic behavior) and stated that she prescribed Risperdal (antipsychotic) and Wellbutrin (antidepressant). AR 910. She opined that Plaintiff has an extreme

United States District Court
Northern District of California

United States District Court
Northern District of California

1    impairment in the ability to maintain attention for two hour segments; maintain regular attendance

2    and be punctual within customary, usually strict tolerances; complete a normal workday or

3    workweek without interruption from psychologically based symptoms; perform at a consistent

4    pace without an unreasonable number and length of rest periods; and deal with normal work

5    stress. AR 912. Dr. Harris also opined Plaintiff has a marked impairment in the ability to sustain

6    an ordinary routine without special supervision; accept instructions and respond appropriately to

7    criticism from supervisors; and respond appropriately to changes in a routine work setting. *Id*.

8    Dr. Harris opined Plaintiff has a moderate impairment in the ability to understand, remember and

9    carry out simple instructions; make simple work-related decisions; work with or near others

10   without being unduly distracted or distracting them; interact appropriately with coworkers; interact

11   appropriately with the public; and adhere to basic standards of neatness and cleanliness. *Id*. Dr.

12   Harris found Plaintiff has an extreme deficiency of concentration, persistence and pace; a

13   moderate difficulty in maintaining social functioning; a 50% interference in concentration and

14   pace at work; and would be absent more than four days a month. AR 913.

15        In response to a question asking if the patient's impairments "would remain as severe in

16   the absence of substance use[,]" Dr. Harris wrote, "Client does not use substances." AR 910. In

17   response to a question asking if there were any additional reasons why her patient "would have

18   difficulty working at a regular job on a sustained basis[,]" Dr. Harris wrote, "can't comprehend

19   instructions, no attention span, distraction from [auditory hallucinations], paranoid and no sense of

20   personal safety, trigger PTSD [symptoms]… response to internal stimuli." *Id*. Finally, Dr. Harris

21   indicated Plaintiff is not a malingerer and is not able to manage funds in her own best interest. AR

22   910.

23        Mental Health NP Shana Green treated Plaintiff from January 27, 2017 until at least July

24   13, 2017 and completed a mental impairment questionnaire on July 13, 2017. AR 1005. Ms.

25   Green diagnosed Plaintiff with major depressive disorder with psychotic features; [rule out]

26   PTSD; [rule out] cognitive disorder [not otherwise specified]. *Id*. Ms. Green indicated Plaintiff

27   has a marked impairment in the overall ability to understand, remember and apply information; a

28   marked impairment in the overall ability to concentrate, persist or maintain pace; a moderate

8

1    impairment in the ability to interact with others; and a moderate impairment in the ability to adapt

2    or manage oneself. AR 1007-08.

3           Ms. Green further found that Plaintiff has extreme impairments in the ability to remember

4    work-like procedures; understand, remember and carry out very short and simple instructions;

5    maintain attention in two hour segments; complete a normal workday or workweek without

6    interruptions from psychologically based symptoms; and perform at a consistent pace without an

7    unreasonable number and length of rest periods. AR 1008. Ms. Green wrote that Plaintiff has a

8    marked impairment in the ability to maintain regular attendance and be punctual within customary,

9    usually strict tolerances; sustain and ordinary routine without special supervision; respond

10   appropriately to changes in a routine work setting; and deal with normal work stress. AR 1008-09.

11   Ms. Green further indicated Plaintiff has a moderate impairment in the ability to work in

12   coordination with or proximity to others without being unduly distracted; make simple work-

13   related decision; ask simple questions or request assistance; accept instructions and respond

14   appropriately to criticism from supervisors; and be aware of normal hazards and take appropriate

15   precautions.  *Id.* Finally, Ms. Green indicated Plaintiff has a mild impairment in the ability to get

16   along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes.

17   AR 1008.  Ms. Green opined Plaintiff would miss four days or more of work each month; be off-

18   task at least 30% of the time; and has a medically documented history of a mental illness of at

19   least two years duration with treatment but nonetheless exhibits marginal adjustment. AR 1009-

20   10.

21          The record contains an Initial Brief Mental Health Assessment by MFT Carlos Ponce dated

22   4/5/2017, which he conducted when Plaintiff self-referred for therapy. AR 994.[5] Mr. Ponce

23   diagnosed Plaintiff with major depressive disorder with psychotic features. AR 999. He found that

24   Plaintiff has severe impairments in the areas of employment, food/shelter, social/peer relations,

25   and activities of daily living. AR 998. Mr. Ponce determined that Plaintiff has moderate

26   impairments in the areas of family relations, self-care, cognition/memory/thought, attention/

27

28   [5] It is not clear whether Plaintiff received therapy from Mr. Ponce after the initial assessment as
     there are no treatment records from Mr. Ponce in the administrative record.

1   impulsivity and affect regulation.  *Id.* Finally, Mr. Ponce indicated Plaintiff has a mild impairment

2   in the areas of physical health and perceptual disturbance. *Id.*

3        The record also contains a number of other reports from psychological evaluations of

4   Plaintiff.  Dr. Laura Catlin, PsyD, completed a report dated August 29, 2014.  AR 535.  Plaintiff

5   was referred to Dr. Catlin for a psychological evaluation by Alameda County Social Services. *Id.*

6   Dr. Catlin administered a clinical interview; Wechsler Abbreviated Scale of Intelligence;

7   Repeatable Battery for the Assessment of Neuropsychological Status; Beck Depression Inventory;

8   Brief Symptom Inventory; Burns PTSD Inventory; she also conducted a review of records (though

9   the report does not indicate what records were reviewed). *Id.*  Dr. Catlin reported Plaintiff to be a

10  credible historian. *Id.* Dr. Catlin provided a detailed analysis of Plaintiff's test results. AR 539-41.

11  Dr. Catlin diagnosed Plaintiff with depressive disorder, severe; PTSD; and cocaine use disorder, in

12  sustained remission. AR 542.

13       Dr. Catlin found Plaintiff has marked impairments in activities of daily living, social

14  functioning and concentration, persistence or pace. AR 543. She determined Plaintiff's

15  impairments would cause her to be absent from work more than four days a month. AR 544. Dr.

16  Catlin determined Plaintiff has a severe impairment in the ability to work in coordination with or

17  proximity to others without being unduly distracted; complete a normal workday and workweek

18  without interruptions from psychologically based symptoms; maintain adequate pace and

19  persistence to perform complete/detailed tasks; perform at a consistent pace without an

20  unreasonable number and length of rest periods; withstand the stress of a routine workday; interact

21  appropriately with co-workers, supervisors, and public on a regular basis; and travel to unfamiliar

22  places and use public transportation. AR 543.

23       Dr. Catlin further found that Plaintiff has a moderate to severe impairment in the ability to

24  perform in the workplace; understand, remember or carry out detailed instructions; maintain

25  adequate pace and persistence to perform simple tasks; maintain attention for two hour segments;

26  maintain regular attendance and be punctual within customary, usually strict tolerances; interact

27  appropriately with the general public; adapt to changes in job routine; accept instruction and

28  respond appropriately to supervisors; and get along with coworkers or peers without unduly

United States District Court
Northern District of California

10

distracting them or exhibiting behavioral extremes. AR 542-43. Dr. Catlin determined Plaintiff has a moderate impairment in the ability to understand and remember short and simple work-like procedures; carry out short and simple instructions; make simple work-related decisions; and be aware of normal hazards and take appropriate precautions. *Id.* Finally, Dr. Catlin determined Plaintiff has a mild impairment in the ability to ask simple questions or request assistance. AR 543.

The record also contains a report from a psychiatric evaluation conducted by consultative examiner Salma Khan, MD, on September 23, 2016, who examined Plaintiff once for the psychological evaluation. AR 899.  Dr. Khan reviewed two forms completed by Plaintiff but no medical records. AR 900.  She based her opinions on the forms and a mental status examination she conducted.  AR 899-906.  Dr. Khan did not administer any diagnostic tests. AR 899-909. Dr. Khan described Plaintiff as "superficially cooperative" but said she "felt like [Plaintiff] was being evasive and was overly vague about her history."  AR 904.   She noted that Plaintiff reported some "relatively new onset symptoms including auditory hallucinations" but also stated that it "wasn't clear to [her] how significant the symptoms are" and that "[t]here is some secondary gain in terms of getting on disability income."  AR 904-905.  Dr. Khan diagnosed Plaintiff with possible schizophrenia spectrum disorder likely secondary to chronic cocaine and methamphetamine use and a history of cocaine, methamphetamine, cannabis and prescription pill use disorders and chronic depression. AR 904. Dr. Khan determined Plaintiff has a mild impairment in the ability to do detailed and complex instructions and maintain concentration and attention, persistence and pace but is otherwise unimpaired.  AR 905.

A psychological evaluation was also conducted by Dr. Kyle Van Gaasbeek, PsyD, a consultative examiner, who examined Plaintiff on October 11, 2014. AR 545.  Like Dr. Khan, Dr. Van Gaasbeek reviewed a form completed by Plaintiff but did not review any medical records; he also conducted no diagnostic tests.  His opinions are based on the interview and mental status exam he conducted.  AR 545-548.  Dr. Van Gaasbeek diagnosed Plaintiff with psychosis due to cocaine abuse. AR 547. Dr. Van Gaasbeek further determined Plaintiff is capable of managing her own funds; mildly impaired in the ability to perform detailed and complex tasks; mildly to

moderately impaired in the ability to interact with coworkers and the public; mildly impaired in the ability to maintain regular attendance in the workplace; mildly impaired in the ability to complete a normal workday without interruptions from a psychiatric condition; and mildly impaired in the ability to deal with the usual stress encountered in the workplace. AR 548.

Another psychological evaluation was conducted by Erica Williams, PsyD, and Lesleigh Franklin, PhD on July 18, 2017.  AR 1011-1016.  Drs. Williams and Franklin administered a clinical interview, Montreal Cognitive Assessment, Subtests of the Wide Range Assessment of Memory and Learning, Amen Brain System Checklist, and PTSD Screening; they also reviewed psychological evaluations from 2014 and 2016.[6]  Drs. Williams and Franklin diagnosed Plaintiff with major depressive disorder, recurrent, severe, with mood-congruent psychotic features and PTSD.  AR 1015.

Based on Plaintiff's test results they concluded Plaintiff has significant impairments in attention, memory and concentration that "will have a significant impact on her ability to remember both simple and complex directions, organize herself to complete tasks, and work as quickly and accurately as other same age adults on tasks that include verbal and visual information."  AR 1014. They determined Plaintiff has an extreme impairment in the ability to understand, remember and carry out detailed instructions and marked impairments in the ability to understand, remember and carry out very short and simple instructions; maintain attention and concentration in two hour segments; perform at a consistent pace without an unreasonable number of rest periods; and complete a normal workday and workweek without interruptions from psychologically based symptoms. AR 1016. Drs. Williams and Franklin also determined Plaintiff has a moderate impairment in the ability to accept instructions and respond appropriately to criticism from supervisors or respond appropriately to changes in a routine work setting and deal with normal work stressors. *Id*. They determined Plaintiff has a mild impairment in the ability to get along and work with others; interact appropriately with the general public; and maintain regular attendance and be punctual within customary, usually strict tolerances. Id.

_____

[6] The report does not provide specific information about the psychological evaluations that Drs. Franklin and Williams reviewed.

1    The record also contains opinions of state agency doctors who did not exam Plaintiff and

2    based their opinions on a review of the record.  Among them was Dr. D. Lucila, MD, who

3    provided opinions on December 3, 2014 in connection with the initial level of adjudication.  AR

4    91.  Dr. Lucila determined Plaintiff has a primary affective disorder and a secondary substance

5    addiction disorder. AR 92. He concluded Plaintiff has a mild restriction of activities of daily

6    living; moderate difficulties maintaining social functioning; and moderate difficulties with

7    maintaining concentration, persistence and pace. AR 92. Dr. Lucila further opined Plaintiff has a

8    moderate limitation in the ability to carry out detailed instructions; moderate limitation in the

9    ability to maintain attention and concentration for extended periods; a moderate limitation in the

10   ability to complete a normal workday and workweek without interruptions from psychologically

11   based symptoms and to perform at a consistent pace without unreasonable number and length of

12   rest periods; and a moderate impairment in the ability to interact with the general public. AR 94-5.

13   Ultimately, Dr. Lucila found that Plaintiff "can perform simple work." AR 91.

14   At the reconsideration level of adjudication, state agency psychological consultant Cal

15   VanderPlate, PhD, provided a mental residual functional capacity assessment based on review of

16   the record on March 26, 2015.  AR 106-113. Dr. VanderPlate determined Plaintiff has a primary

17   affective disorder and a secondary substance addiction disorder. AR 106. Dr. VanderPlate

18   concluded Plaintiff has a mild restriction of activities of daily living; moderate difficulties

19   maintaining social functioning; and moderate difficulties with maintaining concentration,

20   persistence and pace. *Id.* Dr. VanderPlate further opined Plaintiff has a moderate limitation in the

21   ability to carry out detailed instructions; moderate limitation in the ability to maintain attention

22   and concentration for extended periods; a moderate limitation in the ability to complete a normal

23   workday and workweek without interruptions from psychologically based symptoms and to

24   perform at a consistent pace without unreasonable number and length of rest periods; and a

25   moderate limitation in the ability to interact with the general public. AR 109.

26   Dr. VanderPlate further concluded that Plaintiff is able to understand, remember and carry

27   out simple one and two step instructions; maintain concentration, persistence and pace for periods

28   of two hours; perform activities within a schedule; maintain regular attendance; be punctual;

United States District Court
Northern District of California

1    complete a normal workday and workweek; make simple work-related decisions; relate adequately

2    to coworkers and supervisors; ask simple questions; request assistance; accept instructions;

3    respond appropriately to criticism from supervisors; respond appropriately to changes in the work

4    setting; and be aware of normal hazards. AR 110.

5        At the July 26, 2017 hearing, medical expert Dr. Nathan Strahl was asked to summarize

6    the medical records.  He testified that the medical records reflected that Plaintiff's psychotic

7    symptoms, including auditory hallucinations, may have been caused by her marijuana use and her

8    major depressive disorder, but that even apart from her marijuana use Plaintiff experienced severe

9    depression and psychotic symptoms such as auditory hallucinations.  AR 64, 68.

10       **D.    The ALJ's Decision**

11       At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity

12   since July 24, 2014.[7] AR 29.

13       At step two, the ALJ found that Plaintiff had the following severe impairments: a

14   depressive disorder and a post-traumatic stress disorder ("PTSD").  *Id.*  The ALJ found that

15   Plaintiff's history of crack cocaine abuse was not a severe or contributing factor material to a

16   finding of disability.  AR 30.  He further found that there was insufficient evidence to find a severe

17   psychotic disorder.  *Id.*

18       At step three, the ALJ found that Plaintiff's impairments, considered individually or in

19   combination, did not meet a Listing.  AR 32. He specifically considering Listings 12.02

20   (neurocognitive disorders), 12.03 (schizophrenia spectrum and other psychotic disorders), 12.04

21   (depressive, bipolar and related disorders ) and 12.15 (trauma- and stressor-related disorders).  *Id.*

22       At step four, the ALJ found that Plaintiff had the residual functional capacity "to perform a

23   full range of work at all exertional levels but with the following nonexertional limitations: she is

24   limited to performing simple, routine tasks, and is limited to making simple work-related

25

26   ─────────────────────
     [7] The ALJ used this date because it was purportedly the date on which Plaintiff's SSI application
27   was filed.  AR 29.  In fact, the record reflects that the SSI application was filed on July 25, 2014.
     AR 251.  As stated above, the ALJ overlooked Plaintiff's application for disability benefits under
28   Title II, which would have warranted using an earlier onset date for the purposes of conducting the
     five-step analysis.

United States District Court
Northern District of California

decisions." AR 33.

At step five, the ALJ found that in light of Plaintiff's age, education and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff can perform and therefore, that she is not disabled.  AR 44-45.

In reaching his conclusions, the ALJ gave great weight to the opinions of Dr. Khan, little weight to the opinions of MFT Ponce, NP Green, Drs. Williams and Franklin, and Dr. Catlin, limited weight to the opinions of Dr. Harris and partial weight to the opinions of ME Dr. Strahl. AR 39-44.

### E.    The Appeals Council Decision

On February 2, 2019, the Appeals Council notified Plaintiff that it had granted Plaintiff's request for review of the ALJ's decision. AR 239-243.  In the notice, it explained that the ALJ had failed to adjudicate Plaintiff's claim for disability benefits under Title II and had not weighed all the opinion evidence of record "including the State agency medical and psychological consultants . . . or the psychological consultative examiner, Kyle VanGassbeek [sic], PsyD." AR 240. In the decision of the Appeals Council, it reopened the Title II claim and "adopt[ed] the findings or conclusions regarding whether the claimant is disabled." AR 5.   However, the Appeals Council adopted a somewhat more restrictive RFC based on the medical opinions the ALJ had failed to weigh, concluding that Plaintiff had "the residual functional capacity to perform a full range of work at all exertional levels but is limited to simple routine tasks in functioning and judgment; can respond appropriately to the public on occasion; and has no difficulties with supervisors or coworkers."  AR 6.

In connection with the amended RFC, the Appeals Council assigned weight to medical opinions that had not been addressed by the ALJ as follows:

- The Appeals Council gives great weight to the December 3, 2014 opinion of the State Agency psychological consultant D. Lucila, M.D., that the claimant "can perform simple work . . . ;
- The Appeals Council gives some weight to the March 26, 2015 opinion of the State Agency consultant Cal VanderPlate, Ph.D., that the claimant is able to understand, remember and carry out simple one and two-step instructions; and is limited to infrequent contact with the public;

- The Appeals Council gives great weight to the April 1, 2015 opinion of the State Agency medical consultant S. Garcia, M.D., that the claimant has no severe physical medically determinable impairments; and
- The Appeals Council gives great weight to the consultative examiner Dr. VanGassbeek's [sic] opinion that the claimant's ability to interact with coworkers and the public is mild to moderately impaired . . . .

AR 5-6.  The Appeals Council concluded that that there are jobs in significant number in the national economy that Plaintiff can perform based on testimony of the VE at the July 26, 2017 hearing in response to a hypothetical that matched the amended RFC.  AR 6.

## III.   ISSUES FOR REVIEW

1. Whether the ALJ and/or Appeals Council erred in evaluating the medical opinion evidence by: a) failing to give any reasons for the weight assigned to the opinions of Drs. VanGaasbeek, VanderPlate and Lucila (Appeals Council); b) ignoring the opinions of treatment providers Dr. Roxas, NP McCoy and NP Byrd (ALJ and Appeals Council);  c) failing to provide specific and legitimate reasons for rejecting the opinions of examining psychologists Catlin, Williams and Franklin (ALJ); d) failing to provide specific and legitimate reasons for rejecting the opinions of treating providers Harris, Green and Ponce (ALJ); e) failing to provide specific and legitimate reasons for partially crediting the opinions of Dr. Strahl (ALJ); f) failing to provide specific and legitimate reasons for crediting the opinions of consultative examining psychiatrist Dr. Khan (ALJ).

2. Whether the ALJ's step three findings were based on substantial evidence.

3. Whether the RFC adopted by the Appeals Council was based on substantial evidence.

## IV.   ANALYSIS

### A.  Standard of Review

District courts have jurisdiction to review the final decisions of the Commissioner and may affirm, modify, or reverse the Commissioner's decisions with or without remanding for further hearings.  42 U.S.C. § 405(g); *see also* 42 U.S.C. § 1383(c)(3).   When reviewing the Commissioner's decision, the Court takes as conclusive any findings of the Commissioner that are free of legal error and supported by "substantial evidence." Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion" and that is based on the

entire record. *Richardson v. Perales*, 402 U.S. 389, 401. (1971). "'Substantial evidence' means more than a mere scintilla," *id.*, but "less than preponderance." *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988) (internal citation omitted). Even if the Commissioner's findings are supported by substantial evidence, the decision should be set aside if proper legal standards were not applied when weighing the evidence. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (quoting *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1978)). In reviewing the record, the Court must consider both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985)).

**A. Whether the ALJ and Appeals Council Erred in Weighing the Medical Evidence**

"Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), as amended (Apr. 9, 1996). Under this hierarchy, a treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a non-examining physician's opinion. *Id.* To reject the uncontradicted opinion of an examining doctor, the ALJ must provide clear and convincing reasons. *Id.* (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990). Even if the examining doctor's opinion is contradicted by another doctor, the ALJ may reject it only for "specific and legitimate reasons." *Id.* (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.1995)).[8]   Here, the ALJ and Appeals Council committed a multitude of errors in weighing the medical evidence, the most glaring of which are set forth below.

First, the Appeals Council assigned weight to various opinions of the State agency consultants and examiners without any explanation whatsoever. This was legal error both because it ignored some opinions of these individuals that were consistent with other medical evidence in

---

[8] These standards apply to claims filed before March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017); *see also* 20 C.F.R. §§ 404.1520c (a), 416.920c(a). As stated above, Plaintiff filed her claims for disability insurance and SSI benefits before that date.

United States District Court
Northern District of California

1    the record and because it adopted opinions that were contradicted by other medical sources who

2    examined or treated Plaintiff. Thus, the Appeals Council was required to offer at least specific and

3    legitimate reasons for doing so.

4         For example, Dr. Van GaasBeek, the consultative examiner who opined that Plaintiff's

5    ability to interact with coworkers and the public is mild to moderately impaired (the opinion the

6    Appeals Council gave great weight) also diagnosed Plaintiff with psychosis, AR 547, a diagnosis

7    that is repeated by numerous other examining and treating medical sources. *See, e.g.*, AR 796 (NP

8    McCoy), 798 (NP McCoy), 817 (trainee Andrea Marks under supervision of Satwindar Mahabir,

9    MFT), 910 (Dr. Harris), 931 (Cory Bohman NP), 1005 (Shana Green NP), 1015 (Drs. Franklin

10   and Williams). Yet the Appeals Council offered no explanation for its failure to credit that

11   opinion or to reconsider the ALJ's conclusion that Plaintiff's psychosis was not severe. Likewise,

12   it did not explain why it apparently did not give any weight to Dr. Van Gaasbeek's opinions that

13   Plaintiff's ability to maintain regular attendance and complete a normal workday without

14   interruptions from her psychiatric condition was mildly impaired. AR 548.

15        The Appeal's Council's failure to explain its reasons for giving great weight to

16   psychological consultant Dr. Lucila's opinion that Plaintiff "can perform simple work" is similarly

17   problematic. Dr. Lucila did not examine Plaintiff and relied only on his review of the record. In

18   doing so, he gave great weight to Dr. Van Gaasbeek's opinions and little weight to Dr. Caitlin's

19   report, opining that there was "no medical evidence" to support Dr. Catlin's mental RFC. AR 94.

20   He did not explain why he rejected the results of the psychological testing Dr. Catlin conducted

21   (Dr. Van Gaasbeek did not administer any psychological tests); nor did he point to any specific

22   medical records in support of his conclusion. The Appeals Council was required to give specific

23   and legitimate reasons for giving great weight to Dr. Lucila's opinion and failed to do so.[9]

24        The Appeals Council also gave no explanation for giving some weight to the March 26,

25   2015 opinion of State Agency consultant Dr. VanderPlate, that Plaintiff is able to understand,

26

27   _____

28   [9] To the extent that the Appeals Council relied on the reasons the ALJ gave for affording little weight to the opinions of Dr. Catlin, those reasons are also insufficient for the reasons set forth below.

remember and carry out simple one and two-step instructions; and is limited to infrequent contact with the public while ignoring other opinions that suggest a more limited RFC, such as his opinion that Plaintiff is moderately limited in her ability to complete a normal work day or work week without interruptions from psychologically based symptoms. AR 109.  Given that numerous doctors who examined or treated Plaintiff found that she was impaired in this respect, *see* AR  543 (Dr. Catlin finding of severe impairment), 548 (Van Gaasbeek finding of mild impairment), 912 (Dr. Harris finding of extreme impairment), 1008 (NP Green finding of extreme impairment), 1016 (Drs. Franklin and Williams finding of marked impairment), the Appeals Council was required to give specific and legitimate reasons for rejecting Dr. Vanderplate's opinion.  It failed to do so.

Second, the ALJ did not give specific and legitimate reasons for giving great weight to Dr. Khan's opinion that Plaintiff has only a mild impairment as to her ability to follow detailed and complex instructions and maintain concentration and attention and is otherwise unimpaired with respect to her mental functioning.  AR 41-42, 905.  In support of giving great weight to Dr. Khan's opinions, the ALJ pointed to her opinion that "secondary gain is a factor," finding this observation to be consistent with other notations in the record indicating that Plaintiff initially sought treatment at Pathways to Wellness at the recommendation of her SSI advocate and that her case manager had explained to her that medical records created through doctors' visits would support her SSI claim.  AR 41-42 (citing AR 823, 852).  He also found Dr. Khan's opinions to be entitled to great weight because Dr. Khan conducted an in-person evaluation of Plaintiff, was a board certified psychiatrist, was familiar with the rules of the Social Security Administration and her opinions were consistent with other evidence of record.  AR 41. These reasons are not legitimate.

The mere fact that Plaintiff was referred for mental health treatment at Pathways to Wellness by her SSI attorney is not a legitimate basis for dismissing Plaintiff's description of her symptoms and limitations or the observations of her treatment providers as to her symptoms and limitations.   The single case cited by the Commissioner in support of the argument that this was a legitimate reason for the ALJ to give great weight to Dr. Khan's opinions, *Roberts v. Berryhill*,

1      734 Fed. App'x 489 (9th Cir. 2018) (unpublished), involved a very different factual scenario.

2      There, the court upheld that ALJ's determination that the claimant's symptom testimony was not

3      entirely credible based not only on the timing of her treatment but also because she came to the

4      doctor  asking for tests that were "not pertinent for her medical problems" that she found on the

5      Social Security Administration website and which the doctor refused to order.  734 Fed. App'x at

6      491.  Under those circumstances, the court found that the ALJ could draw a reasonable inference

7      that the claimant was "more interested in documenting disability than in receiving treatment to

8      become more functional."  *Id.*  Nothing of the sort happened here; although Plaintiff was referred

9      to Pathways to Wellness by her SSI attorney, there is no suggestion that any provider believed

10     treatment was not warranted.

11            Nor has the Commissioner pointed to any authority to support the conclusion that the mere

12     fact that there is "secondary gain" associated with disability benefits – a reason that could be

13     offered to discount the severity of any claimant's symptoms – is a legitimate reason for

14     discounting a claimant's complaints related to their mental limitations.   Dr. Khan's "feeling" that

15     Plaintiff was being evasive and vague about her medical history is not a legitimate reason

16     supported by substantial evidence to accept her opinions about Plaintiff's mental limitations given

17     that Dr. Khan did not conduct any psychological tests to determine if Plaintiff was malingering or

18     review her medical records to determine whether Plaintiff's reports of her symptoms and

19     limitations were consistent with the medical record.

20            The Court also finds that the treatment note that the ALJ quoted at length to show that Dr.

21     Khan's "feeling" was supported by the record, *see* AR 42 (quoting AR 852), is taken entirely out

22     of context.  The ALJ quoted a portion of the note indicating that Plaintiff's care manager told her

23     that all of her medical records created through doctor visits would support her SSI claim.

24     However, the ALJ omitted the portion of the note stating that Plaintiff had told the care manager

25     that she was experiencing shoulder pain and that the care manager was advising Plaintiff that she

26     should "go to the doctor right away to get help (before it gets worse)."  AR 852. In other words,

27     the treatment provider was trying to encourage Plaintiff to see a doctor for a shoulder problem

28     because Plaintiff had not sought medical help.  That encouragement from Plaintiff's provider does

20

1   not provide a legitimate basis for drawing the conclusion that Plaintiff was more interested in

2   building a record for her social security claim than in seeking treatment, in contrast to the case

3   cited by the Commissioner.  If anything, it supports the opposite inference, namely, that Plaintiff

4   was reluctant to seek treatment *despite* her pending claims for disability benefits and SSI.

5   Moreover, the mere fact that Plaintiff knew that her medical records would be used to support her

6   SSI claim is not a legitimate reason.  Medical records are used to support every SSI claim.

7        The ALJ also gave great weight to Dr. Khan's opinions because she conducted an in-

8   person evaluation of Plaintiff, was a board-certified psychiatrist and was familiar with the rules of

9   the Social Security Administration.  Yet the same is true of Drs. Catlin, Franklin and Williams,

10  who reached very different conclusions from Dr. Khan and found Plaintiff's mental impairments

11  to result in more severe limitations than Dr. Khan did.  Therefore, this is not a legitimate reason

12  for giving great weight to the opinions of Dr. Khan. This reason further falls short because the

13  latter doctors conducted extensive psychological testing and reviewed Plaintiff's medical records

14  whereas Dr. Khan did neither.

15       Finally, the ALJ's conclusion that Dr. Khan's opinions were consistent with the medical

16  record is not a specific and legitimate reason for giving her opinions great weight and is not

17  supported by substantial evidence.  Most notably, Dr. Khan diagnosed Plaintiff with possible

18  schizophrenia affective disorder, AR 904, a diagnosis that is found nowhere else in the record.

19  For these reasons, the Court finds that the ALJ failed to give specific and legitimate reasons

20  supported by substantial evidence for giving great weight to the opinions of Dr. Khan.

21       Conversely, the reasons the ALJ offered for rejecting the opinions of Drs. Catlin, Franklin

22  and Williams also were not specific and legitimate.  The ALJ rejected the Catlin report for three

23  reasons: Dr. Catlin saw the client only one time; Dr. Catlin did not review the full record; and Dr.

24  Catlin relied on Plaintiff's self-reports which are "compromised by inconsistencies in the

25  claimant's reported history elsewhere in the record." AR 39.  Similarly, the ALJ rejected the

26  Williams/Franklin report because Dr. Williams saw Plaintiff only one time and Dr. Williams

27  relied on Plaintiff's self-reports which may not have been accurate. AR 43. The fact that these

28  doctors examined Plaintiff only once is not a legitimate reason for the ALJ's wholesale rejection

of their opinions, given that the ALJ gave "great weight" to the opinions of Drs. Khan, who also saw Plaintiff only once. The ALJ's rejection of Dr. Catlin's opinions on the basis that she did not have access to or review the full medical record also is not a legitimate reason to reject her opinions when the ALJ offered no explanation for overlooking the same purported deficiency with respect to Dr. Khan's opinion.

The remaining reason offered by the ALJ for failing to credit the opinions of these doctors – that they relied in part on Plaintiff's self-reports and there are inconsistencies in the record with respect to statements she has made to various providers, also is not a legitimate reason supported by substantial evidence to discredit their opinions. Most notably, both doctors performed a series of psychological tests and based their opinions, at least in part, on the results obtained from those tests. The ALJ did not provide any explanation for failing to credit the findings of these doctors based on objective testing. Nor is his decision to reject their findings supported by substantial evidence given that the doctors whose opinions he relied upon did not conduct any such testing.

The Court also notes that the ALJ placed significant emphasis on purported inconsistencies in the record with respect to Plaintiff's reports of auditory hallucinations. He pointed out, for example, that Plaintiff reported no auditory hallucinations to Dr. Catlin to support his determination that her opinions were entitled to little weight. AR 39. Yet there are no contemporaneous medical records from the summer of 2014, when Dr. Catlin examined Plaintiff, indicating that Plaintiff was hearing voices at that time. Moreover, the treatment records documenting reports of auditory hallucinations in 2015 and 2016 indicate that this symptom varied in severity over time. The ALJ did not explain why Plaintiff's failure to report to Dr. Catlin that she was hearing voices in August 2014 was not simply a reflection of the fact that at that particular point in time she was not experiencing this symptom. The Ninth Circuit also has recognized that "[c]ycles of improvement and debilitating symptoms are a common occurrence," and cautioned that it is "error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). The ALJ's reliance on the fact that Plaintiff did not report any auditory hallucinations to Dr. Catlin in August 2014 is not a specific

and legitimate reason supported by substantial evidence to reject Dr. Catlin's opinions.

Finally, although the ALJ is not required to address every piece of evidence in the record, he erred by ignoring the treatment notes of NP McCoy, Dr. Roxas and NP Mazu, all of whom assessed Plaintiff's symptoms and mental limitations in the course of treatment. In the case of NP McCoy, he was able to observe Plaintiff's symptoms over a series of visits.   The treatment notes of these providers include GAF scores and observations relating to Plaintiff's ability to engage in daily activities and social interactions and to manage her medications.  They suggest a more limited mental RFC than the ALJ assigned and are inconsistent in many respects with the opinions of the medical sources to which the ALJ gave great weigh. "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012–13 (9th Cir. 2014).  Even as to a treatment provider who is considered an "other source," such as a social worker, the ALJ was required to give "germane" reasons for rejecting their opinions about Plaintiff's symptoms and limitations to the extent they conflicted with the opinions that the ALJ adopted.   *See Turner v. Comm'r of Soc. Sec.,* 613 F.3d 1217, 1224 (9th Cir. 2010).  He failed to do so.

### B.   Remedy

"A district court may affirm, modify, or reverse a decision by the Commissioner 'with or without remanding the cause for a rehearing.'" *Garrison v. Colvin*, 759 F.3d at 1019 (quoting 42 U.S.C. § 405(g)) (emphasis omitted). "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).  On the other hand, the court may remand for award of benefits under the "credit as true" rule where: (1) "the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion"; (2) "there are [no] outstanding issues that must be resolved before a disability determination can be made" and "further administrative proceedings would [not] be useful"; and (3) "on the record taken as a whole, there is no doubt as to disability." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017)

(citations and internal quotation marks omitted); *see also Garrison*, 759 F.3d at 1021 (holding that a district court abused its discretion in declining to apply the "credit as true" rule to an appropriate case).

Here, the Court concludes that further administrative proceedings are required.  While it is apparent that the ALJ and the Appeals Council erred in weighing the evidence in the record, the Court finds that the evidence must be weighed under the correct legal standards to determine if Plaintiff is disabled.  The Commissioner should reconsider not only Plaintiff's mental RFC and whether there are jobs she can perform that exist in significant number in the national economy; he should also revisit steps two and three to determine whether Plaintiff meets a Listing.

## V.      CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiff's Motion for Summary Judgment, DENIES Defendant's Motion for Summary Judgment and remands for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

Dated:  March 14, 2021

JOSEPH C. SPERO
Chief Magistrate Judge

United States District Court
Northern District of California

24